4        APPELLATE COURTS OF ILLINOIS.

Hausafus v. St. Louis, Springfield & Peoria R., 199 Ill. App. 4.

### E. S. Hausafus, Appellee, v. St. Louis, Springfield & Peoria Railroad, Appellant.

#### (Not to be reported in full.)

Appeal from the City Court of Granite City; the Hon. M. R. SULLIVAN, Judge, presiding. Heard in this court at the October term, 1915. Reversed and remanded. Opinion filed April 17, 1916.

### Statement of the Case.

Action by E. S. Hausafus, plaintiff, against the St. Louis, Springfield & Peoria Railroad, defendant, in the City Court of Granite City, to recover for personal injuries. From a judgment for plaintiff for $1,200, defendant appeals.

It appeared that in the forenoon of July 12, 1914, plaintiff started in his five passenger automobile from his home in Granite City, Illinois, to take a ride in the country. On the front seat was his son, who was driving the car, and a daughter, while plaintiff was sitting on the back seat with a friend, and a young daughter of the latter. The top of the automobile was up, and shortly after leaving the city limits they drove south on the Nameoki public highway towards a place where defendant's tracks cross the road at right angles, at a time when defendant's car that caused the injury was approaching the crossing from the east. The physical conditions at and east of the crossing and north of the railroad track necessary for a proper consideration of the issues involved were shown to be substantially as follows: The highway and defendant's right of way, which was 60 feet wide, crossed at right angles, the highway running north and south, and defendant's right of way east and west. On the north the highway began to rise 40 feet back from the crossing and gradually reached the elevation of the track which at the crossing was 6 feet above the nat-

ural surface of the ground. This same elevation above the natural surface of the ground extended east of the crossing some 500 feet. On the west side of the highway was a warning sign. On the east side of the highway towards the car was a blue grass pasture, across which plaintiff would have to look if he saw the car before he reached the right of way. This pasture was separated from the highway by a hedge fence which ran to a point 32 feet north of the right of way, where there was a gate, and was on the natural surface of the ground. There were three persimmon trees near the right of way in the pasture, one of which was some 50 feet from the north rail of the track and the other two further away, from 15 to 18 feet distant from each other. East of the hedge fence, some 525 feet, was a two-story frame house which came within 12 feet of defendant's right of way, and across the 12 feet there was a shed. Along the right of way 6 feet from the north rail of the track were five telegraph poles between the house and the crossing, 100 feet apart. Around the house was a picket fence extending out to the right of way, and there were a number of shade trees in the yard.

Plaintiff and those with him stated they were riding towards the crossing at a speed of twelve to fifteen miles an hour and, when some 300 feet distant therefrom, began to look in both directions for cars; that they continued looking and saw none until within 6 or 7 feet of the track, when they saw a car from 100 to 150 feet away, running at fifty or sixty miles an hour, coming from the east; that the brakes of the automobile were immediately applied, but it was impossible to stop it until the front wheels reached the rail where the trolley car struck it, badly .wrecking the automobile and injuring plaintiff and some of the other occupants; that after they reached the incline leading up to the track, the speed was reduced to six or nine miles an hour; that they listened and heard no signal from

the car; that nothing obstructed the view of the car on the railroad track but the trees, the telegraph poles and the house, and that after passing the trees there was nothing but the telegraph poles. There was the usual controversy as to whether or not those in charge of defendant's car gave signals in approaching the crossing. Plaintiff and those in the motor car with him testified that no such signals were given, while on the part of defendant, George Hesler, who lived in the house referred to, as being east of the highway at that point, testified he was in his front yard and heard the danger signal given; that defendant's car was then half way between the house and the crossing and it kept signaling until it struck the automobile. Three other persons, who were at the Hesler house, another witness living some two blocks from the crossing, a passenger on the car, the conductor and the motorman all testified positively that the danger signal was given by the car in approaching the crossing. Plaintiff also testified that he could have stopped his car within fifteen feet.

BURTON & HAMILTON, for appellant.

J. M. BANDY, R. W. GRIFFITH and H. J. BANDY, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

### Abstract of the Decision.

1. STREET RAILROADS, § 131*—*when evidence sufficient to show that motorman gave signals on approaching crossing.* In an action to recover for personal injuries sustained in a collision between a trolley car and an automobile at a crossing, where the evidence was conflicting as to whether the motorman gave signals on ap-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Hausafus v. St. Louis, Springfield & Peoria R., 199 Ill. App. 4.

proaching the crossing, but where the evidence of the motorman that such signals were given was corroborated by disinterested witnesses having the greater opportunity to hear such signals, *held* that a preponderance of the evidence showed that the signals were given.

2.   STREET RAILROADS, § 97*—*when operator of automobile approaching crossing guilty of contributory negligence.*   In an action for personal injuries as a result of a collision between a trolley car and an automobile at a crossing, where it appeared from plaintiff's testimony that when approaching the crossing the speed of the automobile was reduced to not more than nine miles an hour, and that the machine could be stopped within 15 feet, and where it also appeared that at a point 32 feet from the crossing an unobstructed view of the track could have been had in the direction from which the car came, *held* that the failure of the person operating the automobile to stop it in time to avoid the accident was a want of ordinary care for his own safety and those with him.

3.   STREET RAILROADS, § 131*—*when evidence insufficient to show negligence in operating car at unreasonable rate of speed.*   In an action for personal injuries sustained in a collision between a trolley car and an automobile at a crossing, where the evidence was conflicting as to the speed of the trolley car, but where such car was running through the open country on its own right of way and not on the highway, evidence examined and *held* not to show that the car was being run at an unreasonable rate of speed or without regard to the safety of those on the highway who were in the exercise of care for their own protection.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.